Kramer and Associates
542 4th Ave., Ste. 207
Fairbanks, Alaska 99701
(907) 888-4098
service@mikekramerlaw.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JUSTIN ACKER, EMILY ACKER,<br>E.A. (2019), I.A. (2020),<br>JOHN DOE, JANE DOE,<br>JOHN DOE JR. (2020), AND<br>JANE DOE JR. (2016),<br><br>        Plaintiffs,<br>  v.<br><br>PROVIDENCE HEALTH & SERVICES<br>WASHINGTON d/b/a PROVIDENCE<br>ALASKA MEDICAL CENTER,<br>BARBARA KNOX, MD,<br>AND BRYANT SKINNER,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No.: 4:22-cv-00017-HRH |

# COMPLAINT
(Seeking relief under 42 U.S. § 1983)

## PARTIES AND JURISDICTION

1. Plaintiffs, Justin and Emily Acker, are Alaskans and live in Fairbanks. They are bringing claims on their own behalf and on behalf of their minor children, E.A. (2019) and I.A. (2020).

2. Plaintiffs, John and Jane Doe, are Alaskans and live in Sitka. They are bringing claims on their own behalf and on behalf of their minor children, John

Doe Jr. (2020) and Jane Doe Jr. (2016).[1]

3. Defendant, Providence Health & Services Washington, d/b/a Providence Alaska Medical Center ("Providence"), owns a child advocacy center, Alaska CARES (AC), located on its campus in Anchorage.

4. Knox was employed by Providence.

5. Skinner was employed by Providence.

6. Skinner, as director of forensic services, was Knox's supervisor.

7. Providence and AC are used interchangeably in this complaint because they are not separate legal entities and Providence owns AC.

8. Providence is legally and financially responsible for the actions of AC and any employee of Providence or AC, under respondeat superior.

9. Providence is legally and financially responsible for the actions of AC and any employee of Providence or AC under Aided in Agency.

10. At all times relevant to the events described below, AC was acting as a division of The State of Alaska DHSS, Office of Children's Services (OCS).

11. AC makes diagnoses of child abuse for OCS.

12. AC consults with OCS regarding: Child in Need Aid cases (CINA).

13. AC provides expert testimony for OCS in CINA cases.

14. The State finances AC.

---

[1] The Doe family is bringing this claim under pseudonyms to protect their privacy. Their true names are being provided to the defendant and the court as a confidential exhibit to this complaint. Their true names should not be used in the public file.

COMPLAINT
*Acker, et al. v. Providence, et al.*, 4:22-cv-00017-HRH
Page 2 of 16
Case 4:22-cv-00017-HRH   Document 1   Filed 07/11/22   Page 2 of 16

15. The State paid for the construction of AC.

16. The State funds at least a portion of the operating expenses of AC.

17. The State funded some or all of Knox's salary.

18. The State paid Knox hourly for her work on CINA cases.

19. Knox has a contract with the State of Alaska.

20. That contract provided financial incentives for Knox and/or AC to make child abuse diagnoses.

21. AC has a contract with the State of Alaska.

22. That contract provided financial incentives for AC to produce a high number of child abuse diagnoses.

23. At all times relevant to the event described below, Barbara Knox, MD (Knox) was a licensed medical physician in the State of Alaska, and was an employee, agent, or apparent agent of AC.

24. Defendants Knox, Skinner and Providence are hereinafter collectively referred to as the "Defendants." At all times relevant to the events described below, each of the Defendants acted under color of state law.

25. Knox acted in the scope and course of her employment with AC.

26. Knox bullied other staff members.

27. Knox pressured other staff members to agree with her false diagnoses.

28. Knox was the subject of complaints by other AC Staff.

29. AC negligently investigated those complaints.

30. Skinner negligently supervised Knox.

31. Skinner conspired with Knox to perpetuate false child abuse allegations.

32. AC staff quit because of Knox, and because of Providence's negligent investigation of staff complaints about Knox

33. AC has reached settlement agreements with staff who quit because of Knox.

34. AC has secured nondisclosure agreements with staff who quit because of Knox.

35. Knox bullied AC staff.

36. Knox voluntarily resigned from AC.

37. At the time of Knox's resignation, AC supported all of the child abuse diagnoses she made at AC.

38. Knox was pressured to resign.

39. AC entered into a severance agreement with Knox.

40. AC knew that Knox had misdiagnosed child abuse while employed at AC.

41. AC and/or Skinner conspired to conceal misdiagnoses by Knox.

42. AC has not reported Knox's pattern of misdiagnoses to the Alaska Medical Board.

COMPLAINT
*Acker, et al. v. Providence, et al.*, 4:22-cv-00017-HRH
Page 4 of 16
Case 4:22-cv-00017-HRH   Document 1   Filed 07/11/22   Page 4 of 16

43. Before Knox resigned, AC and/or Skinner believed she had misrepresented the circumstances of her separation from the University of Wisconsin.

44. AC has not reported Knox to the National Practitioner Data Bank.

45. AC conducted a review of Knox's work and determined that some of her child abuse diagnoses failed to meet the standard of care.

46. Knox did not comply with the applicable standard of care.

47. Knox negligently conducted, or failed to conduct, a differential diagnosis when diagnosing child abuse by the Plaintiff parents against their Plaintiff children.

48. All relevant events occurred in Alaska.

49. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and Alaska law to hold Defendants accountable for their misconduct and for violating Plaintiffs' constitutional rights, to redress the loss caused to Plaintiffs and their families by Defendants' outrageous and inexcusable conduct, and to shine a light on these events to ensure the necessary changes are made so that no future family has to suffer the same pain and anguish Plaintiffs have suffered as a result of Defendants' misconduct.

50. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

51. Under 28 U.S.C. § 1391(b), venue in Fairbanks, Alaska is proper because the Ackers live there and harm was suffered in Fairbanks. On information and belief, at least one Defendant resides in the District of Alaska and the events giving rise to the claims asserted here all occurred within this district.

**FACTS**

52. In 2006 the University of Wisconsin hired Dr. Barbara Knox as the medical director of the American Family Children's Hospital.

53. Knox repeatedly made false accusations of child abuse while she was employed by the University of Wisconsin.

54. As a result of Knox's false allegations in Wisconsin, dozens of innocent parents lost custody of their children.

55. As a result of Knox's false allegations in Wisconsin, innocent people were convicted of crimes and sentenced to prison.

56. The University of Wisconsin placed Knox on administrative leave in 2019.

57. Later in 2019, Providence negligently vetted Knox's history before hiring her as the medical director of AC.

58. Providence failed to further investigate the reports about Knox when she worked for the University of Wisconsin.

59. After hiring her, Providence failed to supervise Knox.

60. Providence negligently failed to review Knox's work.

COMPLAINT
*Acker, et al. v. Providence, et al.*, 4:22-cv-00017-HRH
Page 6 of 16
Case 4:22-cv-00017-HRH   Document 1   Filed 07/11/22   Page 6 of 16

61. Providence violated its policies with regard to reviewing Knox's work.

62. Knox's position with Providence made her responsible for doing forensic assessments and diagnosing whether children had been abused.

63. Alaskan law enforcement agencies rely on assessments and diagnoses from AC when deciding whether to file criminal complaints against parents for the heinous crime of abusing their own children.

64. The Office of Children's Services relies on assessments and diagnoses from AC when deciding whether to take custody of children from their parents.

65. Providence had an economic incentive to falsely diagnose child abuse.

66. Knox's history of false allegations of abuse in Wisconsin was widely reported in the press during the same general time period when Providence hired Knox.

67. Providence sent an email to more than 75 people including law enforcement and Providence staff refuting the news reports about Knox's history in Wisconsin and supporting Knox.

68. Providence continues to stand behind (support what was said) the email.

69. Providence does not stand behind that email.

70. Providence received dozens of complaints from Providence employees that Knox was falsely accusing parents of child abuse and bullying subordinate employees.

71. All six members of the medical staff at AC either quit or had their position eliminated as a result of the issues surrounding Knox.

72. The Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to direct the care, upbringing, and education of their children.

73. Emily Acker had a difficult pregnancy with her daughter I.A.

74. I.A. was injured during an emergency cesarean section delivery.

75. Approximately three weeks after I.A. was born, in January of 2021, Knox falsely accused the Ackers of abusing I.A. based on injuries that had actually occurred during childbirth.

76. Defendant Knox conducted an inappropriate, incomplete and deeply flawed examination of I.A., including through her failure to take any steps to obtain a complete and accurate patient history, which violates standard medical practice, hospital policies and procedures, and clinical practice guidelines.

77. Knox's work involving the plaintiffs violated the applicable standard of care.

78. Knox's false accusation caused the Ackers to lose custody of I.A. and their other child, E.A., for more than 11 months.

79. Making recklessly false accusations of child abuse made against a parent is defamatory per se.

80. As a result of Knox's false accusations, the Ackers suffered economic damages and non-economic damages including loss of consortium.

81. At no point during the entirety of their care for either of their children, have Plaintiffs ever done anything to abuse, intentionally harm, or intentionally subject to a risk of harm any child in their care.

82. Providence defamed Justin and Emily Acker. This defamation caused them damages.

83. As a result of Knox's false accusations, the Ackers suffered economic damages and non-economic damages including loss of consortium.

84. Jane Doe had a difficult pregnancy with her son, John Jr.

85. John Jr. has on-going health issues that were caused by the difficult pregnancy.

86. In March of 2021, Knox falsely accused the Does of abusing John Jr. based on injuries that were actually caused by the difficult pregnancy.

87. Defendant Knox conducted an inappropriate, incomplete, and deeply flawed examination of John Jr., including through her failure to take any steps to obtain a complete and accurate patient history, which violates standard medical practice, hospital policies and procedures, and clinical practice guidelines.

88. As a result of Knox's false accusations, the Does lost custody of both their children for more than 5 months.

89. As a result of Knox's false accusations John Doe was charged with Assault in the Second Degree, a felony.

90. As a result of Knox's false accusations Jane Doe was charged with Assault in the Third Degree, a felony.

91. At no point during the entirety of their care for either of their children, have Plaintiffs ever done anything to abuse, intentionally harm, or intentionally subject to a risk of harm any child in their care.

92. Providence defamed Jane Doe. This defamation caused her damages.

93. Providence defamed John Doe. This defamation caused him damages.

94. As a result of Knox's false accusations, Jane Doe suffered economic damages and non-economic damages including loss of consortium.

95. As a result of Knox's false accusations, John Doe suffered economic damages and non-economic damages including loss of consortium.

96. Knox resigned from Providence on April 1, 2022.

97. Knox entered into an agreement with Providence to avoid adverse credentialing action(s) by Providence.

98. That agreement will be claimed to be "confidential" and neither Knox nor AC will agree to disclose it absent court order.

99. As a consequence of this agreement Knox is able to freely travel the country and continue to misdiagnose child abuse, causing similar harm to other parents.

100. Providence is contractually obligated to defend and indemnify the actions of Knox involving plaintiffs while she was employed at Providence.

101. Knox's actions involving the Plaintiffs were all done in the course and scope of her employment with Providence.

102. Defendants above misconduct took place without any due process whatsoever provided to Plaintiffs. Any apparent "process" or procedural protections provided to Plaintiffs were intentionally tainted and thwarted by Defendants' deliberate acts and omissions to perpetuate the false narrative that the child plaintiffs had been subject to abuse by the parent Plaintiffs.

103. Defendants above misconduct took place without any due process whatsoever provided to Plaintiffs. Any apparent "process" or procedural protections provided to Plaintiffs were intentionally tainted and thwarted by Defendants' deliberate acts and omissions to perpetuate the false narrative that John Jr. had been subject to abuse.

104. In the time period 7/1/20-6/30/21, The State provided at least $4,240,685.22 in grants to AC.

105. In addition to the grants identified above, the State provided additional funding to AC.

106. The State provided funds for the construction of the AC facility.

107. The State pays for full time offices for use by State employees, namely social workers and Troopers, at the AC facility.

108. A non-exclusive list of the causes of action asserted by all Plaintiffs include vicarious liability / respondeat superior / aided in agency. Negligence / negligent hiring and supervision / negligence per se / gross negligence. Negligent infliction of emotional distress and intentional infliction of emotional distress. Deprivation of constitutional rights of due process/equal protection and right to raise one's children, under color of State law. Conspiracy to deprive civil rights. Interference with close family relationships. Recklessness or intentional misconduct. Defamation.

109. There are 5 overlapping Supreme Court tests to determine whether the actions of otherwise private defendants can be the basis for 42 U.S.C. § 1983 actions. Providence's operation of AC satisfies these tests to impose 42 U.S.C. § 1983 liability on it.

110. Providence receives state funding for AC.

111. More than half of the annual budget for AC is provided by the State.

112. The State maintains an Alaska State Trooper (AST) office and an Office of Children Services (OCS) office within AC.

113. The State provides significant encouragement for AC to falsely diagnose children of abuse (close nexus test).

114. AC has been delegated a private function (diagnosing child abuse) that is traditionally the exclusive prerogative of the State (public function test).

115. AC is controlled by agencies of the State, OCS/AST (symbiotic relationship test).

116. AC operates as a willful participant in joint activity with OCS/AST (joint action test).

117. The actions of AC are entwined with State policies and/or the State is entwined in its management and control (state compulsion/pervasive entwinement test).

118. AC's actions against the Plaintiffs can fairly be attributed to the State of Alaska.

119. Providence was under contract with the State to provide forensic services related to CINA and criminal cases.

120. Providence was under contract with the State to provide advice to OCS and law enforcement.

121. Providence was under contract with the State to assist OCS in pursuing CINA cases by providing expert testimony in CINA cases.

122. Providence was under contract with the State to assist law enforcement by providing advice and providing testimony in criminal cases asserting child abuse.

123. As director of forensic services, Skinner worked closely with AST and OCS.

124. The more child abuse cases AC diagnoses for AST and/or OCS, the more revenue it generates.

125. Skinner's compensation from Providence was related to the number of child abuse diagnoses AC generated.

126. In the manner described more fully above, the Defendants individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, acted to deprive Plaintiffs of their liberty interests in their existing and anticipated future familial relationship involving the Plaintiffs, without due process of law and in violation of their rights secured by the U.S. Constitution.

127. In the manner described more fully above, the Defendants, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, treated Plaintiffs less favorably, afforded them fewer rights, privileges, and procedural protections, and acted in a manner violative of Plaintiffs' dignity and basic human and civil rights on account of Plaintiffs' status as parents.

128. The Defendants' misconduct described was undertaken pursuant to Providence's policies and practices.

129. The misconduct described was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

130. In the manner described more fully above, the Defendants, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, treated Plaintiffs less favorably and afforded them fewer rights, privileges, and procedural protections than similarly situated individuals were treated.

131. In the manner described more fully above, during the Constitutional violations described above, Providence stood by without intervening to prevent the misconduct.

132. All of the Defendants reached an agreement amongst themselves to deprive Plaintiffs of their constitutional rights, as described in greater detail above.

133. The Constitutional injuries complained of herein were proximately caused by a pattern and practice of misconduct, which occurred with the knowledge and consent of those of the Defendants who acted in a supervisory capacity, such as Skinner, such that Skinner personally knew about, facilitated, approved, and condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation by their actions or by their deliberately indifferent failure to act.

134. Providence is required by law, contract, or other obligation to pay any tort judgment for compensatory damages for which their employees are liable within the scope of their employment activities.

135. Defendants defamed plaintiff parents.

## RELIEF REQUESTED

136. Trial by jury.

137. Judgment against Defendants, awarding compensatory damages, punitive damages, attorney's fees and costs under 42 U.S.C. § 1988 and any other applicable authority, and any other relief this Court deems just and appropriate.

DATED this 8th day of July 2022.

        KRAMER and ASSOCIATES
        Attorney(s) for Plaintiff

        By /s/ Michael C. Kramer
           Michael C. Kramer
           ABA #9605031

COMPLAINT
*Acker, et al. v. Providence, et al.*, 4:22-cv-00017-HRH
Page 16 of 16
Case 4:22-cv-00017-HRH   Document 1   Filed 07/11/22   Page 16 of 16