TIMOTHY W. BOWMAN, ESQ.
FARLEY & GRAVES, P. C.
807 G Street, Suite 250
Anchorage, Alaska 99501
Phone: (907) 274-5100 Fax: (907) 274-5111
Email: tbowman@farleygraves.com

Attorneys for Defendant Barbara Knox, M.D.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA AT FAIRBANKS**

| | |
|---|---|
| JUSTIN ACKER, EMILY ACKER, E.A. (2019), I.A. (2020; JOHN DOE, JANE DOE, JOHN DOE JR. (2020), AND JANE DOE JR. (2016), <br><br> Plaintiffs, <br><br> v. <br><br> PROVIDENCE HEALTH & SERVICES WASHINGTON d/b/a PROVIDENCE ALASKA MEDICAL CENTER, BARBARA KNOX, M.D., and BRYANT SKINNER, <br><br> Defendants. | Case No. 4:22-cv-00017 SLG |

<u>**DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR SUMMARY JUDGMENT**</u>

COMES NOW, Defendant, Barbara Knox, M.D., by and through counsel, Farley & Graves, P.C. and hereby seeks for dismissal by way of Fed. R. Civ. P. 56(f).

The Plaintiffs contend that Dr. Knox colluded with the Office of Children's Services in OCS' assumption of temporary custody of I.A., John Doe, Jr. and their siblings, and in so doing, infringed upon their 14th Amendment Rights. The I.A. case and the John Doe, Jr. case are factually unrelated to one another. The alleged infringement is not reasonably attributable to Dr.

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 1 of 24

/JW
.P.33112

FARLEY & GRAVES, P. C.

807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100 FAX (907) 274-5111

Knox or Defendant Providence Health & Services Washington d/b/a Providence Alaska Medical Center (hereinafter alternatively, Providence) because Dr. Knox did not institute custody proceedings or criminal investigations as to either family, nor did she collude with any state agency to effectuate a predetermined result.

Dr. Knox's involvement with the I.A. and John Doe, Jr. matters occurred within the context of her role with Providence's Alaska CARES multidisciplinary child abuse response team.[1] Specifically, Dr. Knox diagnosed I.A. as exhibiting signs of nonaccidental trauma. State agencies reportedly used Dr. Knox's medical diagnosis of I.A. in conjunction with custody and/or criminal proceedings. However, she declined to evaluate John Doe, Jr., and instead referred his evaluation to Seattle Children's Hospital. The State could not have used any opinion from Dr. Knox in conjunction with any proceeding related to John Doe, Jr., for the simple reason that she never rendered an opinion as to John Doe, Jr.

The Court should grant summary judgment in favor of Dr. Knox because (1) the allegations based upon 42 U.S.C. § 1983 cannot apply to any named defendant, as none are governmental actors, (2) Dr. Knox is immune from liability pursuant to AS 47.14.300(h) and AS 47.17.050, and (3) Dr. Knox did not have the requisite physician-patient relationship with John Doe, Jr. for her to be otherwise liable for medical malpractice pursuant to AS 09.55.540.

---

[1] Exhibit A, Affidavit of Barbara Knox, M.D. dated February 8, 2023, at ¶ 5.

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 2 of 24

/JW
.P.33112

Case 4:22-cv-00017-SLG   Document 25   Filed 02/13/23   Page 2 of 24

From 2019 through 2021, Dr. Knox served as the director of Alaska CARES, a child advocacy center (hereinafter alternatively, CAC), operated by Providence. Providence is a 42 U.S.C. 501(c)(3) corporation, and Providence employed Dr. Knox at all times relevant to this claim.[2]

Alaska CARES evaluates approximately 1000 Alaska children per year who have been the victims of sexual abuse or physical abuse.[3] Alaska CARES is an accredited member of the National Children's Alliance (hereinafter alternatively, NCA).[4] The NCA is the governing body for more than 450 child advocacy centers nationally.[5] Any interested party – law enforcement, schools, doctors – can engage Alaska CARES' services when there is a concern for abuse or neglect.[6] Alaska CARES does not charge for services.[7] Instead, Alaska CARES operates almost entirely from donations and private grants. Alaska CARES' benefactors include Providence Health, the Southcentral Foundation, the Rasmuson Foundation, Alaska Airlines, Alaska Railroad Corporation, Alcan Electric & Engineering, Alyeska Pipeline Services Company, Anchorage Daily News, Alaska BP, Bristol Bay Native Corporation, Caelus Energy Alaska, the Carrs Foundation, Chugach Alaska Corporation, Conoco Phillips Alaska, Davis Constructors, Edison Chouest Offshore, Enstar Natural Gas Company, ExxonMobil, Eyak Corporation, GCI,

---

[2] Exhibit A, at ¶ 1.
[3] Exhibit B, "Community Support Needed To Build New Space For Child Abuse Response Service," July 27 2018.
[4] Exhibit B; see also Exhibit A, at ¶ 3.
[5] Exhibit B.
[6] Alaska Cares video. https://www.providence.org/lp/ak/alaska-cares.
[7] Id.

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 3 of 24

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

Grainger Foundation, the Hearst Foundation, Hilcorp Alaska, Holland America Line & Princess Cruises, the Hotel Captain Cook, KPB Architects, Marathon Petroleum Corporation, Northrim Bank, TOTE Maritime, the Travis Fund, and the Wells Fargo Foundation, among others.[8]

Alaska CARES utilizes the multidisciplinary team (hereinafter alternatively, MDT) approach to assess child abuse cases, pursuant to the NCA's standards of accreditation.[9] The National Standards of Accreditation of Children's Advocacy Centers describes an MDT as:

> "[A] group of professionals from specific and distinct disciplines that collaborates from the point of report and throughout a child and family's involvement with the CAC. MDTs coordinate investigations and service delivery to mitigate potential trauma to children and families, to keep open the lines of communication and maintain transparency and foster trust, and to help optimize a quality response overall, while preserving and respecting the rights of the clients, and the mandates and obligations of each agency."[10]

Dr. Knox's involvement with the I.A. case and the Doe case occurred within the context of her role as a member of an MDT, created and organized by Alaska CARES.[11]

Per the National Children's Alliance, an MDT must be comprised of victim advocates, child protective services, medical providers, prosecution, mental health providers, MDT leadership, CAC staff, and may be expanded to include members of other relevant disciplines, depending upon the needs of a particular case.[12] Other appropriate members of the MDT might

---

[8] Exhibit C, Providence Donor Recognition.
[9] Exhibit A, at ¶ 4.
[10] Exhibit D, National Standards of Accreditation of Children's Advocacy Centers, 2023 Edition, p. 14.
[11] Exhibit A, at ¶ 5.
[12] Exhibit D, National Standards of Accreditation of Children's Advocacy Centers, 2023 Edition, p. 14 (CAC National Accreditation Standards identify guardians ad litem, adult and juvenile probation officers, dependency (civil) attorneys, out-of-home care licensing personnel, federal investigators, school personnel, domestic violence providers as other possible professional who may participate in the MDT).

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG                    Page 4 of 24                    /JW
                                                                            .P.33112

Case 4:22-cv-00017-SLG   Document 25   Filed 02/13/23   Page 4 of 24

include guardians ad litem, adult and juvenile probation officers, dependency attorneys, out-of-home care licensing personnel, federal investigators, school personnel, domestic violence counselors, and others deemed necessary on a case by case basis.[13]

Nationwide CAC adoption of the MDT approach obviated the need for child abuse victims  recount the abuse they suffered for each investigating organization, advocacy agency, or health care provider.[14]  The pre-MDT model required the victim to repeatedly detail the circumstances of the abuse, with each retelling traumatizing the victim anew. The coordinated MDT approach benefits the victim by consolidating the need for duplicative forensic interviews and minimizing the need to repeat the sensitive facts of the abuse. Though the NCA standards emphasize that it "is important that clear boundaries are maintained between each function" the coordinated approach facilitates efficient interagency communication, information sharing, collaboration of key individuals, and results in timelier and more appropriate referral for necessary services.[15]

Dr. Knox's role in the Alaska CARES MDT was to evaluate patients for  medical evidence of non-accidental trauma, and to determine an abuse victim's medical needs.[16] Though she would share her medical opinion with OCS and/or law enforcement, she never made decisions regarding custody of any child, including the Doe children or the Acker children.[17] Furthermore, she played no role in the decision to investigate and/or criminally charge any alleged abuser.[18]

---

[13] Exhibit D, p. 14.
[14] Exhibit D, pp. 14; 18; 25; 28.
[15] Exhibit D, p. 14.
[16] Exhibit A, at ¶ 6.
[17] Exhibit A, at ¶ 7.
[18] Exhibit A, at ¶ 8.

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 5 of 24

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

**A.    Dr. Knox's Involvement With The I.A. Case**

Dr. Knox's involvement with the I.A. case started when Bassett Army Hospital transferred I.A. (DOB: 12/12/2020) to the Providence pediatric intensive care unit (PICU) on January 2, 2021. I.A.'s mother, Plaintiff Emily Acker, presented to the Bassett ER earlier that day with I.A. complaining that her then-22-day-old infant had stopped eating, she had a fever of 101.3° F., her eyes were blinking, and she had tremors to her extremities.[19] Ms. Acker reported to attending physician David Skolnick, MD that she had experienced a complicated birth. Dr. Skolnick reviewed the birth records and confirmed that I.A. was born via cesarean section following a failure to descend.[20] The birth records documented bruising overlaying I.A.'s right frontal and parietal bones (the top of the skull), a small cephalohematoma[21] and a small pinpoint subconjunctival hemorrhage of the right eye.[22]

However, Dr. Skolnick's physical exam of I.A. on January 2, 2021 revealed bruising over the right cheek/suborbital region and ongoing mild tremors of the extremities.[23] A subsequent CAT scan showed a right parietal calvarial fracture, also not observed at birth, with moderately advanced right hemisphere edema and a 2.5 cm posterior right temporal lobe parenchymal hematoma.[24] The birth records do not indicate that I.A. suffered a skull fracture during delivery.[25]

---

[19] Exhibit E, Bassett Army Community Hospital Records, January 2, 2021, pp. 10-14.
[20] Id.
[21] Cephalohematoma is a bleed which occurs between the skull and the periosteum. The periosteum is a membrane which covers the outer surface of the bones of the body. In other words, the cephalohematoma bleeding noted at birth was outside of the skull.
[22] Exhibit E, pp. 10-14; and pp. 1-4.
[23] Exhibit E, pp. 10-14.
[24] Unlike a cephalohematoma, a parenchymal hematoma is a bleed which occurs inside of the skull, causing blood to pool in the brain tissue.
[25] Exhibit E, pp. 10-14.

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 6 of 24

/JW
.P.33112

Dr. Skolnick determined that I.A. required a higher level of care and contacted Fairbanks Memorial Hospital, who recommended that Dr. Skolnick send the child to the Providence PICU.[26]

Prior to Dr. Knox's involvement, Dr. Skolnick, Bassett Army Hospital attending pediatrician Donia Blauvelt, M.D., and consulting licensed clinical social worker, Anthony Baza, LCSW agreed that I.A.'s presentation was consistent non-accidental trauma.[27] Mr. Baza contacted OCS to report suspicion for child abuse prior to I.A.'s transfer to Providence – and prior to any evaluation by Dr. Knox.[28] Once I.A. arrived at Providence, Dr. Knox evaluated him as part of the Alaska CARES multidisciplinary child abuse response team and agreed with the medical opinion that I.A.'s injuries were consistent with non-accidental trauma.[29]

### B.    Dr. Knox's Involvement With The John Doe, Jr. Case

Dr. Knox never evaluated, let alone opined as to any condition involving, John Doe, Jr (DOB 11/23/2020).[30] His mother, Plaintiff Jane Doe, brought John Doe, Jr. for a well–child exam on March 23, 2021 with Valerie Edwards, M.D. at SEARHC Mt. Edgecumbe Hospital. During previous visits, Dr. Edwards and nursing staff observed bruising on John Doe Jr.'s cheeks bilaterally, as well as a bruise on the right side of his chest.[31] On March 11, 2021 Dr. Edwards

---

[26] Exhibit E, pp. 10-14.
[27] Exhibit E, p. 5; and pp. 10-14.
[28] Id.
[29] Exhibit F, Providence Alaska Medical Center Records, January 2, 2021.
[30] Exhibit A, at ¶ 9.
[31] Exhibit G, SEARHC Mt. Edgecumbe Hospital records, March 23, 2021, p. 8.

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 7 of 24

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100  FAX (907) 274-5111

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

also noted that John Doe, Jr.'s weight had decreased from the 20th percentile to the 2nd percentile.[32]

In anticipation of the March 23, 2021 visit, Dr. Edwards contacted Alaska CARES and spoke with Dr. Knox for guidance on the appropriate workup of a four-month-old presenting with unexplained bruising.[33] As Dr. Edwards anticipated, Dr. Knox recommended that Dr. Edwards order a radiographic skeletal survey, among other diagnostic studies.[34] Providers in Sitka completed the skeletal survey on March 23, 2021, which revealed that John Doe, Jr. had eleven broken ribs, plus bilateral broken femurs.[35]

Thereafter, John Doe, Jr. came to the care of Sitka pediatrician David Vastola, M.D. who determined that the child exhibited signs and symptoms consistent with non-accidental trauma.[36] In mid-April 2021, Dr. Vastola contacted Dr. Knox and asked her to do a formal pediatric assessment for non-accidental trauma.[37] However, Dr. Knox declined and referred Dr. Vastola to Seattle Children's for the evaluation.[38]

Subsequently, in response to Dr. Vastola's request to Seattle Children's for a work-up, Rebecca Wiester, M.D., the Medical Director of Seattle Children's Hospital Safe Child and Adolescent Network, reviewed the John Doe, Jr. case. Dr. Wiester determined that Dr. Vastola's

---

[32] Exhibit G, pp. 1-7.
[33] Exhibit G, p. 8.
[34] Id.
[35] Exhibit G, pp. 9-10.
[36] Exhibit G, pp. 11-20.
[37] Exhibit A, at ¶ 10; *See also* Exhibit H. Medical records and at least one OCS log entry indicate that Dr. Vastola anticipated that Dr. Knox would perform the evaluation of John Doe, Jr. However, as stated, Dr. Knox ultimately declined, referring Dr. Vastola to Seattle Children's Hospital.
[38] Exhibit A, at ¶ 10.

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 8 of 24

/JW
.P.33112

medical evaluation was "appropriate" and "complete."[39] Dr. Knox never examined John Doe, Jr., nor did she review any of his records.

Dr. Knox's sum-total involvement with John Doe, Jr. was (1) to advise Dr. Edwards that a skeletal survey, among other studies, is an appropriate diagnostic evaluation for a four-month-old with unexplained facial bruising, and (2) to refer Dr. Vastola to Seattle Children's for pediatric abuse review. After referring Dr. Vastola to Seattle Children's, neither Dr. Knox nor any other Alaska CARES personnel had further involvement with the Doe case.[40]

## ARGUMENT

## I. PLAINTIFFS' §1983 CLAIMS FAIL BECAUSE THEY CANNOT SHOW A CONSTITUTIONAL INFRINGEMENT RESULTING FROM A GOVERNMENT POLICY AND DR. KNOX HAS NEVER BEEN A STATE ACTOR

To assert a claim for relief under 42 U.S.C. §1983, Plaintiffs must establish that they were deprived of a right secured by the Constitution or the laws of the United States and that the alleged deprivation was committed under color of state law. Heineke v. Santa Clara University, 379 F.3d 1009, 1012 (9th Cir. 2020). "The ultimate issue in determining whether a person is subject to suit under §1983 is the same question posed in cases arising under the 14th Amendment: is the alleged infringement of federal rights fairly attributable to the [government]?" Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982).

The proponent of a §1983 claim must establish (1) that the deprivation was the result of a government policy, and (2) the party charged with the deprivation must be fairly said to be a

---

[39] Exhibit H, Letter from Seattle Children's Hospital to David Vastola, M.D., June 7, 2021.
[40] Exhibit A, at ¶ 11.

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 9 of 24

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

governmental actor. <u>Sutton v. Providence St. Joseph Medical Center</u>, 192 F.3d 826, 835 (9th Cir. 1999).

### A. Plaintiffs' Claim for Relief Under 42 U.S.C. §1983 Fails Because the Alleged Wrongful Conduct Was Not the Result of a Governmental Policy.

Dr. Knox's involvement with the I.A. and the John Doe, Jr. cases was as a medical professional. The alleged deprivation for which Plaintiffs seek relief in this case is the loss of child custody and subsequent criminal investigations. For the Plaintiffs to assert a viable §1983, they must demonstrate that Dr. Knox's conduct was "caused by the exercise of some right or privilege created by the [government] or a rule of conduct imposed by the [government]." <u>Lugar v. Edmondson Oil Co., Inc.</u>, 457 U.S. 922, 937 (1982). Judicially recognized examples of conduct caused by the exercise of right or privilege created by a government rule include a private creditor's exercise of state-created garnishment procedures or a private employer's obligation under federal law to obtain an employee Social Security number prior to hiring. <u>See</u>, <u>Sniadach v. Family Finance Corp.</u>, 395 U.S. 337 (1969); <u>Lugar v. Edmondson Oil Co., Inc.</u>, 457 U.S. 922, 937 (1982).

Under the <u>Sniadach</u> and <u>Lugar</u> examples, the alleged constitutional deprivation was the exercise of state-mandated duties or procedures. <u>See</u>, <u>Sniadach v. Family Finance Corp.</u>, 395 U.S. 337 (1969); <u>Lugar v. Edmondson Oil Co., Inc.</u>, 457 U.S. 922, 937 (1982). By contrast, the rules and standards Dr. Knox followed in exercising her medical judgment where those promulgated by the American Medical Association and the National Children's Alliance – independent, nongovernmental entities.

FARLEY & GRAVES, P. C.

807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 10 of 24

/JW
.P.33112

Plaintiffs here seek redress for alleged wrongful termination/suspension of custody and/or criminal investigation. Plaintiffs' assertion of a §1983 claim against Dr. Knox does not get out of the gate because she had no role in custody determinations of any child, nor in the decisions to institute criminal investigations.[41] Accordingly, Plaintiffs' argument, then, relies on the on the fallacious conclusion that any private medical examination b*ecomes* a government action simply because the results of that exam are thereafter used as evidence in a criminal or OCS proceeding. The Court should dismiss Plaintiffs' §1983 because they cannot demonstrate any of Dr. Knox's actions were in furtherance of a government policy.

**B**. **Dr. Knox Has Never Been a Governmental Actor, Therefore the § 1983 Asserted Against Her Fails as a Matter of Law**

"[M]erely private conduct, however discriminatory or wrongful," falls outside the purview of the 14th Amendment. Blum v. Yaretsky, 457 U.S. 991, 1002 (1982) (citation omitted). The conduct of a private actor is presumed to fall outside of the scope of §1983 claims. Heineke v. Santa Clara University, 379 F.3d 1009, 1012 (9th Cir. 2020). Since Dr. Knox was, at all times relevant, an employee of a private sector employer, her conduct is presumed to fall outside the scope of §1983 claims. That presumption may only be overcome in limited circumstances upon a showing of one of four recognized exceptions: (1) the public function test, (2) the joint action test, (3) the governmental compulsion test, and (4) the governmental nexus test. Sutton v. Providence St. Joseph Medical Center, 192 F.3d 826, 835-836 (9th Cir. 1999). As discussed below, none of the recognized exceptions apply to allow a viable §1983 claim against any named defendant.

---

[41] Exhibit A, at ¶¶ 7-8.

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 11 of 24

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

1.  **The Public Function Test Does Not Apply to Warrant Treatment of Dr. Knox as a Governmental Actor.**

"Under the public function test, 'when private individuals or groups are endowed by the state with powers or functions governmental in nature, they become agencies or instrumentalities of the state and subject to its constitutional limitations.'" Lee v. Katz, 276 F.3d 550, 554-555 (2002) (quoting, Evans v. Newton, 382 U.S. 296, 299 (1966)). For the public function tests to apply, the function at issue must be both "traditionally and exclusively governmental." Rendell-Baker v. Kohn, 457 US 830, 842 (1982). The Supreme Court clarified that a private party is not subject to §1983 simply because it conducts a "public" function; the action must also be the "exclusive province of the State." Rendell-Baker v. Kohn, 457 US 830, 842 (1982). ("There can be no doubt that the education of maladjusted high school students is a public function…That a private entity performs a function which serves the public does not make its acts state action.").

In their Complaint, Plaintiffs identify one fact which they allege tends to show that Dr. Knox's actions meet the public function test: they contend that diagnosing child abuse is "traditionally the exclusive prerogative of the State."[42] The Supreme Court has specifically rejected the conclusion that medical judgments of private sector physicians made according to professional standards constitute state action. Blum v. Yaretsky 457 U.S. 991, 1008 (1982)(The Blum Court rejected the plaintiffs' §1983 claim against nursing homes, who relied on physician-supplied medical opinions, later used in support of the state's decision to end certain Medicaid benefits enjoyed by the plaintiffs without a hearing.). The Court found no state action, observing the discharge "*decisions ultimately turn on medical judgments made by private parties according*

---

[42] See, Docket 1, Page 13 of 16 (Complaint, ¶ 114).

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 12 of 24

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

*to professional standards that are not established by the State*" (emphasis added)). A child abuse diagnosis is a medical judgment, like any other, made based upon professional standards not established by the state. Therefore, it is inapposite to characterize Dr. Knox's evaluations and/or colleague consultations as public functions "traditionally and exclusively" within the prerogative of the state.

More generally speaking, Courts have identified examples of traditional and exclusive functions of the state, such as exercising eminent domain and regulating free speech in a public forum. Jackson v. Metropolitan Edison Company, 419 US 345, 353 (1974); Lee v. Katz, 276 F.3d 550, 555 (2002). Medical diagnosis is plainly distinguishable from those examples. If rendering a diagnosis of child abuse – let alone an arm's-length colleague consultation – satisfies the public function test, then at least thousands of physicians since the advent of modern medicine have unwittingly and repeatedly been rendering themselves governmental actors. On the contrary, Plaintiffs' contention is grossly inaccurate. The Court should reject Plaintiffs' contention that the public function test applies and rule that Dr. Knox's actions fall outside of the realm of §1983 claims.

**2.** **The Joint Action Test Does Not Apply to Warrant Treatment of Dr. Knox as a Governmental Actor.**

To determine if the joint action test applies to treat a private party as a governmental actor for the purposes of §1983, "'courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.' The test focuses on whether the state has 'so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity.'" Franklin v.

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 13 of 24

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100 FAX (907) 274-5111

Fox, 312 F.3d 424, 445 (9th Cir.2002)(Citations omitted). No joint action exists where the benefit of the complained-of conduct does not flow to the state. Kirtley v. Rainey, 326 F.3d 1088, 1093 (9th Cir.2003) (Holding that a court-appointed guardian ad litem is insulated from §1983 liability in a case alleging improper custodial placement of a minor child.)

The 9th Circuit Court of Appeals specifically rejected the contention that a guardian ad litem – specifically appointed by the Court for the purpose of fact-finding and reporting in custody proceedings – was a joint actor with the state. Kirtley v. Rainey, 326 F.3d 1088, 1094 (9th Cir. 2003). Dr. Knox was an employee of a private non-profit, rendering medical judgment pursuant to applicable professional standards. She did not act in concert with OCS or law enforcement to effectuate a particular result.[43] Instead, like the guardian ad litem in Kirtley, state actors later used her medical opinions to make custody determinations and/or institute criminal investigations. Kirtley v. Rainey, 326 F.3d 1088, 1091 (9th Cir. 2003). Dr. Knox's mere rendering and reporting of her medical opinion can no more make her subject to §1983 liability than the guardian ad litem in Kirtley. Plaintiffs' argument would put any trial witness on par with a prosecutor, i.e., a state joint actor, depending upon whether complaining party found the witness' testimony favorable to the ultimate outcome of their case.

In support of their contention for the applicability of the joint action test, Plaintiffs assert that "[Alaska CARES] operates as a willful participant in joint activity with OCS/AST…"[44] Though it is true that OCS and the Alaska State Troopers were both represented on the Alaska CARES multidisciplinary team, simply working with state actors does not suffice to render all

---

[43] Exhibit A, at ¶ 12.
[44] See, Docket 1, Page 13 of 16 (Complaint, ¶ 116).

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 14 of 24

/JW
.P.33112

participating non-governmental actors subject to §1983 liability. The joint action test requires a conspiracy between the governmental and non-governmental participants with the shared goal of violating a plaintiff's constitutional rights. <u>United Steel Workers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-41 (9th Cir. 1989). Dr. Knox rendered an evidence-based medical opinion as to I.A. and consulted with a professional colleague about John Doe, Jr. She did not conspire with any party to effectuate loss of custody or the bringing of criminal charges.[45]

Plaintiffs' reliance on the joint action test fails because Dr. Knox's goal in participating in the multidisciplinary team was to exercise her medical judgment in the best interest of I.A. and John Doe, Jr. in adherence to the National Standards of Accreditation of Children's Advocacy Centers.[46] Importantly, the National Children's Alliance – the agency promulgating the standards – is also a 42 U.S.C. 501(c)(3) corporation, not a government agency.[47]

Common participants in the Alaska CARES multidisciplinary team enter into a Memorandum of Agreement whereby they acknowledge the scope of their independent team role.[48] Of the three commitments listed for Providence and the eighteen commitments listed for Alaska CARES, none involve a law enforcement or custodial determination function.[49] In fact, even the commitments listed for law enforcement and OCS are focused on supporting the health and wellness of abuse victims, in perfect keeping with the Memorandum of Agreement's stated

---

[45] Exhibit A, at ¶ 12.
[46] Exhibit A, at ¶ 3.
[47] Exhibit I, <u>ProPublica</u> article RE the National Children's Alliance Inc.
[48] Exhibit J, Memorandum of Agreement, pp. 2-7 of 16.
[49] Exhibit J, at pp. 2-3 of 16

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 15 of 24

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

goal to "[promote] a comprehensive child-centered approach to identify, treat and heal children affected by sexual abuse, physical abuse and neglect."[50]

Dr. Knox's dealings with I.A. and John Doe, Jr. occurred within the bounds her role as a team pediatrician.[51] To the extent that state officials subsequently used her opinion as evidence in criminal or child custody proceeding, it simply makes her witness. Even assuming, *arguendo*, that the complained-of custody determinations and the law enforcement actions constituted a deprivation of constitutional rights, Plaintiffs cannot point to any evidence tending to show that Dr. Knox or Providence conspired with law enforcement or OCS to effectuate those harms. Therefore, they cannot assert a viable §1983 claim against the Defendants based upon the joint action test.

<strong>3. <u>The Government Compulsion Exception Does Not Apply to Allow Plaintiffs to Overcome the Inapplicability of §1983.</u></strong>

The Government Compulsion exception applies "where the state has 'exercised coercive power or has provided such significant encouragement' that the challenged action must be considered that of the state or where the 'state knowingly accepts the benefit derived from unconstitutional behavior.'" <u>Heineke v. Santa Clara University</u>, 379 F.3d 1009, 1012 (9th Cir. 2020)(<u>Citations omitted</u>.).

In support of their argument that the Government Compulsion test applies, Plaintiffs allege that Alaska CARES' actions "are entwined with state policies and/or the state is entwined in its management and control."[52] In reality, Alaska CARES' actions are governed by the

---

[50] Exhibit J, p. 1 of 16.
[51] Exhibit A, at ¶ 3.
[52] <u>See</u>, Docket 1, Page 13 of 16 (Complaint, ¶ 117).

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

/JW
.P.33112

FARLEY & GRAVES, P. C.

807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100 FAX (907) 274-5111

applicable NCA standards of accreditation and the Memorandum of Agreement outlining the roles of the Alaska CARES multidisciplinary team.

Plaintiffs' Complaint inaccurately alleges that Alaska CARES is government funded and is saddled with (non-existent) contractual obligations to the state.[53] In their Answer, Co-Defendants Providence and Bryant Skinner clarified that though Alaska CARES is the beneficiary of stated administered grants, it is not state funded.[54] Co-Defendants also confirmed the inaccuracy of the allegations of contractual relationships between Providence and the State.[55] As noted above, Alaska CARES generously receives funding from dozens of private benefactors.[56] Regardless, receipt of government funds is insufficient to convert a private company into a state actor, even where "virtually all of the (actor's) income [i]s derived from government funding." Heineke v. Santa Clara University, 379 F.3d 1009, 1013 (9th Cir. 2020). The government must also exercise coercion in conjunction with funding – i.e., the state must threaten to withdraw patronage unless the private entity does its bidding.

The mere fact that a private company is subject to government oversight is an insufficient basis to meet the government compulsion test, even when funding is specifically contingent upon compliance with state regulations. Heineke v. Santa Clara University, 379 F.3d 1009, 1013 (9th Cir. 2020) (See, e.g., Sutton, 192 F.3d 826, 841 (9th Cir. 1999)("[G]overnmental compulsion in the form of a generally applicable law, without more, is [not] sufficient to deem a private entity

---

[53] See, e.g., Docket 1, Page 11-14 of 16 (Complaint ¶104-106; ¶110-111; ¶119-122).
[54] See, Docket 18, Page 9 of 12 (Providence Health & Services-WA d/b/a Providence Alaska Medical Center and Bryant Skinner's Answer to Complaint, ¶ 110).
[55] See, Docket 18, Page 8-9 of 12 (Providence Health & Services-WA d/b/a Providence Alaska Medical Center and Bryant Skinner's Answer to Complaint, ¶104-106; ¶110-111; ¶119-122).
[56] Exhibit B.

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 17 of 24

/JW
.P.33112

a governmental actor."); <u>Jackson v. Metro. Edison Co.</u>, 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the 14th Amendment.")).

Plaintiffs cannot show evidence that Providence is dependent upon state funding, let alone that they are being coerced into actions violative of Plaintiffs' constitutional rights. Therefore, they are unable to assert a viable argument for the application of the government compulsion test.

> **4.** **The Government Nexus Test Does Not Apply to Allow Plaintiffs to Overcome the Inapplicability of §1983.**

State action may be found only if there is such a close nexus between the state and the challenged action that seemingly private behavior may be fairly attributable to the state. <u>Brentwood v. Tennessee Secondary School Athletic Association</u>, 121 U.S. 288, 295 (2001)(<u>citing</u>, <u>Jackson v. Metro. Edison Co.</u>, 419 U.S. 345, 351 (1974)). For example, the close nexus exists where an off-duty state employee purports to act under color of law in the performance of his duties to influence the behavior of others. <u>Anderson v. Warner</u>, 451 F.3d 1063, 1065-66 (9th Cir.2006)(An off-duty correctional officer assaulted a motorist after the two were in a traffic collision. While assaulting the motorist, the officer prevented bystanders from intervening, by informing them that he was a member of law enforcement.). The <u>Kirtley</u> court rejected the close Nexus test as to the guardian ad litem – who was appointed by the state, paid by the state and subject to state regulation – holding that those links are not sufficient to meet the Nexus test. <u>Kirtley v. Rainey</u>, 326 F.3d 1088, 1094 (9th Cir. 2003).

There is no evidentiary basis to demonstrate that Dr. Knox's conduct – a medical evaluation of I.A. and a curbside referral of John Doe, Jr. – was so closely intertwined with that

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 18 of 24

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

of the state that it should be deemed "fairly attributable to the state." Unlike the guardian ad litem in <u>Kirtley</u>, Dr. Knox has never been a government employee, she was not appointed by the state, she has never paid by the state, nor was she subject to state regulation, apart from those regulations governing the practice of medicine. Not only is she not vested with state authority and never purported to be, but Dr. Knox also made none of the complained-of decisions – i.e., withdrawal of custody, conducting criminal investigations and/or bringing criminal charges. Her role in the Acker and Doe cases was limited to the performance of her duties as a pediatrician in conformance with the standards of her profession. The Court should find that Dr. Knox is not subject to §1983 liability because the Plaintiffs cannot meet the close nexus test.

## II.     DR. KNOX IS IMMUNE FROM CIVIL LIABILITY FOR ALLEGED DAMAGES.

State law and widely promulgated public policy mandates Dr. Knox's immunity for the complained-of actions. 42 U.S.C. § 5106a governs federal administration of grants to the states for child abuse/neglect prevention and treatment programs. The federal code makes a state's eligibility for grants specifically contingent upon state creation and enforcement of laws providing immunity from civil liability for individuals who, like Dr. Knox, "provide information or assistance, including medical evaluations or consultations, in connection with a report, investigation, or legal intervention pursuant to a good faith report of child abuse or neglect." 42 U.S.C. § 5106a. (b)(2)(B)(vii).

In keeping with the requirements of the federal grant statute, the State of Alaska provides for Dr. Knox's immunity by way of AS 47.14.300 and AS 47.17.050. Therefore, upon dismissal of the §1983 claims, any remaining claims against Dr. Knox cannot survive judicial scrutiny and she should be likewise dismissed with prejudice.

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 19 of 24

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

**A.** **Dr. Knox is Immune from Liability for Any Action Taken in Furtherance of Her Role/Duties on Alaska CARES MDT Pursuant to AS 47.14.300(h).**

AS 47.14.300 (h) holds that "(a) person who serves on a multidisciplinary child protection team is not liable for damage or other relief in an action brought by the reason of the performance of a duty, a function or an activity of the team." As part of the Alaska CARES multidisciplinary team, Dr. Knox conducted medical evaluations of children for whom there is a concern for abuse, she rendered diagnoses regarding the existence of nonaccidental trauma and she made recommendations as to abuse victims' medical needs.[57] Because Dr. Knox's involvement with the I.A. case and the John Doe, Jr. case occurred within the context of her role with the Alaska CARES multidisciplinary team, she is statutorily immune and she should be dismissed with prejudice.

**B.** **Dr. Knox is Immune from Civil Liability for Her Opinion Related to A.I. or John Doe, Jr. Pursuant to AS 47.17.050.**

AS 47.17.050 holds that "a person who, in good faith, makes a report under this chapter… or participates in judicial proceedings related to the submission of reports under this chapter, is immune from civil or criminal liability that might otherwise be incurred…" The law specifically extends immunity to medical providers who report on suspected child abuse and even contemplates the participation of those professionals in conjunction with ongoing investigations and interviews through a child advocacy center, such as Alaska CARES. See, AS 47.17.020; AS 47.17.033. Dr. Knox dealt with both Plaintiffs' cases in good faith to protect the health and

---

[57] Exhibit A, at ¶ 6.

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 20 of 24

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100    FAX (907) 274-5111

wellness of Alaska children. Accordingly, she is afforded immunity under AS 47.17.050 and both Plaintiffs' claims against her should be dismissed with prejudice.

## III. DR. KNOX DID NOT HAVE THE REQUISITE PHYSICIAN-PATIENT RELATIONSHIP WITH JOHN DOE, JR. TO GIVE RISE TO LIABILITY FOR MEDICAL MALPRACTICE.[58]

The Alaska Supreme Court stated that "Alaska Statute 09.55.540 defines the standard of care for malpractice actions based upon the negligent or willful misconduct of health care practitioners. We have previously held that the duty to meet this standard of care arises specifically from the existence of a physician-patient relationship." Smith v. Radecki, 238 P.3d 111, 114 (Alaska 2010) (citing, M.A. v. United States, 951 P.2d 851, 856 (Alaska 1998)). After Smith v. Radecki, the Alaska Legislature amended AS 09.55.540 to codify the Alaska Supreme Court's holding that a provider-patient relationship must have existed between the plaintiff and the health care provider at the time of the complained-of action for the provider to be liable for medical malpractice.[59]

---

[58] To be clear, the immunity afforded Dr. Knox under AS 47.14.300 and AS 47.17.050 and the lack of a provider-patient relationship each constitute independent bases warranting her dismissal.

[59] Pursuant to AS 09.55.540, a party alleging malpractice in Alaska must, by a preponderance of the evidence, prove:

> (1) that *the plaintiff had a health care provider-patient relationship with the defendant at the time of the act complained of*;
>
> (2) the degree of knowledge or skill possessed, or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;
>
> (3) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 21 of 24

/JW
.P.33112

Case 4:22-cv-00017-SLG   Document 25   Filed 02/13/23   Page 21 of 24

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

The Court in <u>M.A. v. United States</u> previously clarified that the existence of a duty in medical malpractice cases "turns not on the particularized facts of a given case, but rather on the basic nature of the relationship between the parties to the cause of action." <u>M.A. v. United States</u> 951 P.3d 851, 854 (Alaska 1998). Following the <u>M.A.</u> ruling, the court in <u>Smith v. Radecki</u> affirmed the trial court's summary judgment dismissal of the medical malpractice suit brought by the examinee against Dr. Radecki, finding that Dr. Radecki did not have the requisite physician-patient relationship to support a medical malpractice claim under AS 47.14.300. <u>Smith v. Radecki</u>, 238 P.3d 111, 117 (Alaska 2010).

In so ruling, the Alaska Supreme Court held that the IME examiner's relationship to the examinee was fundamentally different than that of a treating physician based on facts including:

- The physician expressly limited the scope of his examination to those conditions at issue.
- The physician was not selected by the examinee.
- The physician was not hired by the examinee.
- The physician does not report to the examinee.

Dr. Knox never examined John Doe, Jr., never reviewed any of his medical records, never ordered treatment specific to his medical needs and never rendered any diagnosis related to his clinical presentation. Dr. Knox never reported to, or otherwise communicate with, his family – indeed, there was never anything to report.[60] To rehash, Dr. Knox's total involvement with the John Doe, Jr. case was (1) she consulted with Dr. Edwards regarded the indicated diagnostic

---

(4) that, as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care, the plaintiff suffered injuries that would not otherwise have been incurred.
(Emphasis added).

[60] Exhibit A, at ¶ 9.

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 22 of 24

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

FARLEY & GRAVES, P. C.

807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100  FAX (907) 274-5111

studies for a four-month-old infant presenting with unexplained bruising, and (2) she referred Dr. Vastola to Seattle Children's Hospital after declining his request to conduct a full pediatric child abuse evaluation.[61]

Simply put, the factual record is utterly lacking for evidence to demonstrate that a physician-patient relationship existed between Dr. Knox and John Doe, Jr. To hold otherwise would be to create physician-patient relationships between countless physicians and patients, who never met and who barely know of each other's existence, simply because a treating physician called a colleague to consult regarding the best course of treatment. Since there are no facts tending to show that a physician-patient relationship existed between Dr. Knox and John Doe Jr., John Doe Jr. cannot have a viable medical malpractice claim and Dr. Knox should be dismissed with prejudice.

## **CONCLUSION**

The Court should grant Dr. Knox's Motion for Summary Judgment and dismiss her with prejudice from this lawsuit because (1) Dr. Knox never acted in conformance with a government policy so as to create exposure under 42 U.S.C. §1983, (2) §1983 actions are otherwise inapplicable to Dr. Knox because is a non-governmental actor, (3) Plaintiffs cannot establish that any recognized exceptions applies to allow her, as a non-governmental actor, to be held liable under §1983, (4) Dr. Knox is otherwise immune from liability for all allegations lodged against her pursuant to AS 47.14.300 and AS 47.17.050, and (5) she did not have the predicate physician-

---

[61] Exhibit A, at ¶ 10; see also, Exhibit G, pp. 11-20.

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 23 of 24

/JW
.P.33112

Case 4:22-cv-00017-SLG   Document 25   Filed 02/13/23   Page 23 of 24

patient relationship with John Doe, Jr. under AS 09.55.540 to support a claim for medical malpractice in Alaska.

DATED this 13th of February 2023 at Anchorage, Alaska.

FARLEY & GRAVES, P. C.


By:____s/TIMOTHY W. BOWMAN_____
807 G Street, Suite 250
Anchorage, AK 99501
Ph. (907) 274-5100
Fax (907) 274-5111
E-Mail: tbowman@farleygraves.com
Alaska Bar No.: 0905012
Attorneys for Defendant Barbara Knox, M.D.


**CERTIFICATE OF SERVICE**

Pursuant to Civil Rule 5, I hereby certify that on the 13th day of February 2023 a true and correct copy of the foregoing was served CM/ECF electronically on the following person(s):

Michael C. Kramer, Esq.
Kramer and Associates
542 4th Ave., Suite 207
Fairbanks, AK 99701
*Counsel for Plaintiffs*
service@mikekramerlaw.com
arnell@mikekramerlaw.com

Chester D. Gilmore Esq.
Cashion Gilmore, LLC
510 L Street, Suite 601
Anchorage, AK 99501
*Counsel for Providence and Bryant Skinner*
chester@cashiongilmore.com
jennifer@cashiongilmore.com


By: s/Joyce L. Wylie_____
Legal Assistant
jwylie@farleygraves.com

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100 FAX (907) 274-5111

DEFENDANT BARBARA KNOX, M.D.'S MOTION FOR
SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 24 of 24

/JW
.P.33112