TIMOTHY W. BOWMAN, ESQ.
FARLEY & GRAVES, P. C.
807 G Street, Suite 250
Anchorage, Alaska 99501
Phone: (907) 274-5100 Fax: (907) 274-5111
Email: tbowman@farleygraves.com

Attorneys for Defendant Barbara Knox, M.D.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA AT FAIRBANKS

JUSTIN ACKER, EMILY ACKER, E.A. (2019),
I.A. (2020; JOHN DOE, JANE DOE, JOHN DOE
JR. (2020), AND JANE DOE JR. (2016),

        Plaintiffs,

        v.

PROVIDENCE HEALTH & SERVICES
WASHINGTON d/b/a PROVIDENCE ALASKA
MEDICAL CENTER, BARBARA KNOX, M.D.,
and BRYANT SKINNER,

        Defendants.

Case No. 4:22-cv-00017 SLG

## DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION FOR SUMMARY JUDGMENT

      COMES NOW, Defendant, Barbara Knox, M.D., by and through counsel, Farley &
Graves, P.C. and hereby seeks dismissal by way of Fed. R. Civ. P. 56.

      The Plaintiffs contend that Dr. Knox colluded with the Office of Children's Services in
OCS' assumption of temporary custody of I.A. (DOB: 2020), and her sibling E.A. (DOB: 2019),
and in so doing, infringed upon their 14th Amendment Rights. Dr. Knox is not, and never has
been, a state actor. She is a private physician, who was employed by Defendant Providence

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 1 of 21

/JW
.P.33112

FARLEY & GRAVES, P. C.

807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

Health & Services Washington d/b/a Providence Alaska Medical Center (hereinafter alternatively, Providence). Dr. Knox conducted a medical evaluation of I.A. within the context of her role as a child abuse pediatrician on Providence's Alaska CARES multidisciplinary child abuse response team.[1] Dr. Knox diagnosed I.A. as having suffered abusive head trauma following evaluation on January 2, 2021. State agencies reportedly used Dr. Knox's medical diagnosis of I.A. in conjunction with custody and/or criminal proceedings. The alleged infringement is not reasonably attributable to Dr. Knox because she did not institute custody proceedings or any criminal investigation, nor did Dr. Knox collude with any state agency to effectuate a predetermined result.

The Court should grant summary judgment in favor of Dr. Knox and dismiss her from this matter with prejudice because (1) the allegations based upon 42 U.S.C. § 1983 cannot apply since the alleged deprivation of a Constitutional right did not result from either Defendants' implementation of a government policy, (2) allegations based upon 42 U.S.C. § 1983 further fail because neither Defendant is a governmental actor, and (3) Dr. Knox is otherwise immune from any remaining tort liability pursuant to AS 47.14.300(h) and AS 47.17.050.

## FACTS

From 2019 through 2021, Dr. Knox served as the medical director of Alaska CARES, a child advocacy center (hereinafter alternatively, CAC), operated by Providence. Providence is a 42 U.S.C. 501(c)(3) corporation, and Providence employed Dr. Knox at all times relevant to this claim.[2]

---

[1] Exhibit A, Affidavit of Barbara Knox, M.D. dated February 8, 2023, at ¶ 5.
[2] Id. at ¶ 1.

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 2 of 21

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100  FAX (907) 274-5111

Alaska CARES evaluates approximately 1000 Alaska children per year who have been the victims of sexual abuse or physical abuse.[3] Alaska CARES is an accredited member of the National Children's Alliance (hereinafter alternatively, NCA).[4]  The NCA is the governing body for more than 450 child advocacy centers nationally.[5]  Any interested party – law enforcement, schools, doctors – can engage Alaska CARES' services when there is a concern for abuse or neglect.[6]

While Alaska CARES does limited billing to insurance, families never receive a bill.[7] Alaska CARES meets its operating costs primarily from donations and grants. Alaska CARES opened a new facility in 2018. Providence Health Services paid the $12.8 million cost of opening the facility, including about $6 million that Providence raised from community support.[8] None of the money used to build the Alaska CARES facilities was governmental.[9] Providence provides between $1.7 million and $2 million annually.[10]  Alaska CARES also receives monetary

---

[3] Exhibit B, "Community Support Needed To Build New Space For Child Abuse Response Service," July 27 2018.
[4] Id.; see also Exhibit A, at ¶ 3.
[5] Exhibit B.
[6] See, Alaska Cares video. https://www.providence.org/lp/ak/alaska-cares.
[7] Id; Exhibit C, Deposition of Bryant Skinner, pp. 179; 184.
[8] Exhibit C, pp 179; 184.
[9] Id. at pp. 175-6; Alaska CARES' private benefactors include Providence Health, the Southcentral Foundation, the Rasmuson Foundation, Alaska Airlines, Alaska Railroad Corporation, Alcan Electric & Engineering, Alyeska Pipeline Services Company, Anchorage Daily News, Alaska BP, Bristol Bay Native Corporation, Caelus Energy Alaska, the Carrs Foundation, Chugach Alaska Corporation, Conoco Phillips Alaska, Davis Constructors, Edison Chouest Offshore, Enstar Natural Gas Company, ExxonMobil, Eyak Corporation, GCI, Grainger Foundation, the Hearst Foundation, Hilcorp Alaska, Holland America Line & Princess Cruises, the Hotel Captain Cook, KPB Architects, Marathon Petroleum Corporation, Northrim Bank, TOTE Maritime, the Travis Fund, and the Wells Fargo Foundation, among others; see also Exhibit D, Providence Donor Recognition.
[10] Exhibit C, at p. 174.

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 3 of 21

/JW
.P.33112

contributions from its various partner agencies. For example, the Southcentral Foundation provides about $300,000 per year for operating costs.[11] Alaska CARES receives about $740,000 in federal "pass-through" grants per year, i.e., federal monies administered by the State of Alaska.[12] Additionally, Alaska CARES is receiving a five-year grant directly from the Department of Justice of approximately $600,000 total, meant to fund one full-time child advocacy center position.[13]

Alaska CARES utilizes the multidisciplinary team (hereinafter alternatively, MDT) approach to assess child abuse cases, pursuant to the NCA's standards of accreditation.[14] The National Standards of Accreditation of Children's Advocacy Centers describes an MDT as:

> "[A] group of professionals from specific and distinct disciplines that collaborates from the point of report and throughout a child and family's involvement with the CAC. MDTs coordinate investigations and service delivery to mitigate potential trauma to children and families, to keep open the lines of communication and maintain transparency and foster trust, and to help optimize a quality response overall, while preserving and respecting the rights of the clients, and the mandates and obligations of each agency."[15]

Dr. Knox's involvement with the I.A. case occurred within the context of her role as a member of an MDT, created and organized by Alaska CARES.[16]

Per the National Children's Alliance, an MDT must be comprised of victim advocates, child protective services, medical providers, prosecution, mental health providers, MDT

---

[11] Id. at p. 81.
[12] Id. at p. 169.
[13] Id. at p. 164.
[14] Exhibit A, ¶ 4.
[15] Exhibit E, National Standards of Accreditation of Children's Advocacy Centers, 2023 Edition, p. 14.
[16] Exhibit A, ¶ 5.

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 4 of 21

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

leadership, CAC staff, and may be expanded to include members of other relevant disciplines, depending upon the needs of a particular case.[17] Other appropriate members of the MDT might include guardians ad litem, adult and juvenile probation officers, dependency attorneys, out-of-home care licensing personnel, federal investigators, school personnel, domestic violence counselors, and others deemed necessary on a case by case basis.[18]

Nationwide CAC adoption of the MDT approach obviated the need for child abuse victims  recount the abuse they suffered for each investigating organization, advocacy agency, or health care provider, thereby minimizing the impact on the victims.[19] The pre-MDT model required the victim to repeatedly detail the circumstances of the abuse, with each retelling traumatizing the victim anew. The coordinated MDT approach benefits the victim by consolidating the need for duplicative forensic interviews and minimizing the need to repeat the sensitive facts of the abuse. Though the NCA standards emphasize that it "is important that clear boundaries are maintained between each function" the coordinated approach facilitates efficient interagency communication, information sharing, collaboration of key individuals, and results in timelier and more appropriate referral for necessary services.[20]

Dr. Knox's role in the Alaska CARES MDT was to evaluate patients for  medical evidence of non-accidental trauma, render an appropriate diagnosis and to determine an abuse victim's

---

[17] Exhibit E, p. 14 (CAC National Accreditation Standards identify guardians ad litem, adult and juvenile probation officers, dependency (civil) attorneys, out-of-home care licensing personnel, federal investigators, school personnel, domestic violence providers as other possible professional who may participate in the MDT).

[18] Id.

[19] Id. at pp. 14; 18; 25; 28.

[20] Id. at p. 14.

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 5 of 21

/JW
.P.33112

FARLEY & GRAVES, P. C.

807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

medical needs.[21] Though she would share her medical opinion with OCS and/or law enforcement, she never made decisions regarding custody of any child, including the Acker children.[22] Furthermore, she played no role in the decision to investigate and/or criminally charge any alleged abuser.[23]

Dr. Knox's involvement with the I.A. case began *after* Bassett Army Hospital notified OCS that I.A. exhibited signs of child abuse and emergently medivacked her from Ft. Wainwright to the Providence on January 2, 2021. I.A.'s mother, Plaintiff Emily Acker, presented to the Bassett ER earlier that day with I.A. complaining that her then-22-day-old infant had stopped eating, she had a fever of 101.3° F., her eyes were blinking, and she had tremors to her extremities.[24] Ms. Acker reported to attending physician David Skolnick, MD that she had experienced a complicated delivery.[25] Bassett Providers reviewed the birth records and confirmed that I.A. was born via cesarean section following a failure to descend.[26] The birth records documented bruising overlaying I.A.'s right frontal and parietal bones (the top of the skull), a small cephalohematoma[27] and a small pinpoint subconjunctival hemorrhage in the right eye.[28]

---

[21] Exhibit A, ¶ 6.
[22] Id. at ¶ 7.
[23] Id. at ¶ 8.
[24] Exhibit F, Bassett Army Community Hospital Records, December 12, 2020, at pp. 10-14.
[25] Id. at pp. 5; 10.
[26] Id. at 5.
[27] Cephalohematoma is a bleed which occurs between the skull and the periosteum. The periosteum is a membrane which covers the outer surface of the bones of the body. In other words, the cephalohematoma bleeding noted at birth was outside of the skull.
[28] Exhibit F, at pp. 3; 10.

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 6 of 21

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

Dr. Skolnick's physical exam of I.A. on January 2, 2021 revealed bruising over the right cheek/suborbital region and ongoing mild tremors of the extremities.[29] A subsequent CAT scan showed a right parietal calvarial fracture, also not observed at birth, with moderately advanced right hemisphere edema and a 2.5 cm posterior right temporal lobe parenchymal hematoma.[30] To be clear the birth records do not indicate that I.A. suffered any skull fracture during delivery.[31] In fact, I.A.'s Apgar score following birth was a 9 at one minute and 9 at five minutes, demonstrating a healthy child.[32] Dr. Skolnick determined that I.A. required a higher level of care and contacted Fairbanks Memorial Hospital, who recommended that Dr. Skolnick send the child to the Providence PICU immediately.[33]

Before Dr. Knox was even aware of I.A.'s case, Dr. Skolnick, Bassett Army Hospital attending pediatrician Donia Blauvelt, M.D., and consulting licensed clinical social worker, Anthony Baza, LCSW agreed that I.A.'s presentation was consistent non-accidental/abusive head trauma.[34] Mr. Baza contacted OCS to report suspicion for child abuse prior to I.A.'s transfer to Providence – and prior to any evaluation by Dr. Knox or Providence.[35] Once I.A. arrived at Providence, Dr. Knox evaluated her as part of the Alaska CARES multidisciplinary child abuse response team and concurred that her injuries were consistent with non-accidental trauma.[36]

---

[29] Id. at p. 11.
[30] Unlike a cephalohematoma, a parenchymal hematoma is a bleed which occurs inside of the skull, causing blood to pool in the brain tissue.
[31] Exhibit F, pp. 1- 4.
[32] Id. at p. 3.
[33] Id. at p. 11.
[34] Id. at p. 5-9.
[35] Id.
[36] Exhibit G, Providence Alaska Medical Center Records, January 2, 2021.

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 7 of 21

/JW
.P.33112

**ARGUMENT**

I.    **PLAINTIFFS' §1983 CLAIM FAILS BECAUSE THEY CANNOT SHOW A CONSTITUTIONAL INFRINGEMENT RESULTING FROM A GOVERNMENT POLICY AND DR. KNOX HAS NEVER BEEN A STATE ACTOR**

To assert a claim for relief under 42 U.S.C. §1983, Plaintiffs must establish that they were deprived of a right secured by the Constitution or the laws of the United States and that the alleged deprivation was committed under color of state law. Heineke v. Santa Clara University, 379 F.3d 1009, 1012 (9th Cir. 2020). "The ultimate issue in determining whether a person is subject to suit under §1983 is the same question posed in cases arising under the 14th Amendment: is the alleged infringement of federal rights fairly attributable to the [government]?" Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982). The proponent of a §1983 claim must establish (1) that the deprivation was the result of a government policy, and (2) the party charged with the deprivation is a governmental actor. Sutton v. Providence St. Joseph Medical Center, 192 F.3d 826, 835 (9th Cir. 1999).

A.    **Plaintiffs' Claim for Relief Under 42 U.S.C. §1983 Fails Because the Alleged Wrongful Conduct Was Not the Result of a Governmental Policy.**

Dr. Knox's involvement with the I.A. case was as a medical professional. The alleged deprivation for which Plaintiffs seek relief is the loss of child custody and subsequent criminal investigations. For the Plaintiffs to assert a viable §1983 claim, they must demonstrate that Dr. Knox's conduct was "caused by the exercise of some right or privilege created by the [government] or a rule of conduct imposed by the [government]." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982). Judicially recognized examples of conduct caused by the exercise

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG                    Page 8 of 21                    /JW
.P.33112

Case 4:22-cv-00017-SLG    Document 79    Filed 01/31/24    Page 8 of 21

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

of right or privilege created by a government rule include a private creditor's exercise of state-created garnishment procedures or a private employer's obligation under federal law to obtain an employee's Social Security number prior to hiring. See, Sniadach v. Family Finance Corp., 395 U.S. 337 (1969); Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982).

Under the Sniadach and Lugar examples, the alleged constitutional deprivation was the exercise of government-mandated duties or procedures. See, Sniadach v. Family Finance Corp., 395 U.S. 337 (1969); Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982). By contrast, the rules and standards Dr. Knox followed in exercising her medical judgment where those promulgated by the American Medical Association and the National Children's Alliance – independent, nongovernmental entities.

Plaintiffs' assertion of a §1983 claim against Dr. Knox does not get out of the gate because she had no role in custodial determinations for any child.[37] Accordingly, Plaintiffs' argument, then, relies on the on the fallacious conclusion that any private medical examination b*ecomes* a government action simply because the results of that exam are thereafter used as evidence in a criminal or OCS proceeding. The Court should dismiss Plaintiffs' §1983 because they cannot demonstrate any of Dr. Knox's actions were in furtherance of a government policy.

B.    **Dr. Knox Has Never Been a Governmental Actor, Therefore the § 1983 Claim Asserted Against Her Fails as a Matter of Law**

"[M]erely private conduct, however discriminatory or wrongful," falls outside the purview of the 14th Amendment. Blum v. Yaretsky, 457 U.S. 991, 1002 (1982) (citation omitted). The conduct of a private actor is presumed to fall outside of the scope of §1983 claims. Heineke

---

[37] Exhibit A, ¶¶ 7-8.

v. Santa Clara University, 379 F.3d 1009, 1012 (9th Cir. 2020). Since Dr. Knox was, at all times relevant, an employee of a private sector employer, her conduct is presumed to fall outside the scope of §1983 claims. That presumption may only be overcome in limited circumstances upon a showing of one of four recognized exceptions: (1) the public function test, (2) the joint action test, (3) the governmental compulsion test, and (4) the governmental nexus test. Sutton v. Providence St. Joseph Medical Center, 192 F.3d 826, 835-836 (9th Cir. 1999). As discussed below, none of the recognized exceptions apply to allow a viable §1983 claim against Dr. Knox or Providence.

### 1. The Public Function Test Does Not Apply to Warrant Treatment of Dr. Knox as a Governmental Actor.

"Under the public function test, 'when private individuals or groups are endowed by the state with powers or functions governmental in nature, they become agencies or instrumentalities of the state and subject to its constitutional limitations.'" Lee v. Katz, 276 F.3d 550, 554-555 (2002) (quoting, Evans v. Newton, 382 U.S. 296, 299 (1966)). For the public function tests to apply, the function at issue must be both "traditionally and exclusively governmental." Rendell-Baker v. Kohn, 457 US 830, 842 (1982). The Supreme Court clarified that a private party is not subject to §1983 liability simply because it conducts a "public" function; the action must also be "the exclusive province of the State." Rendell-Baker v. Kohn, 457 US 830, 842 (1982). ("There can be no doubt that the education of maladjusted high school students is a public function…That a private entity performs a function which serves the public does not make its acts state action.").

In their Complaint, Plaintiffs identify one fact which they allege tends to show that Dr. Knox's actions meet the public function test: they contend that diagnosing child abuse is

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 10 of 21

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100  FAX (907) 274-5111

"traditionally the exclusive prerogative of the State."[38] The United States Supreme Court has specifically rejected the conclusion that medical judgments of private-sector physicians made according to professional standards constitute state action. Blum v. Yaretsky, 457 U.S. 991, 1008 (1982)(The Blum Court rejected the plaintiffs' §1983 claim against nursing homes, who relied on physician-supplied medical opinions, later used in support of the state's decision to end certain Medicaid benefits enjoyed by the respondents without a hearing.). In reversing the 2nd Circuit Court of Appeals, the Supreme Court found nursing home reliance on physician medical opinions did not constitute state action, even though those opinions were used to determine eligibility for Medicaid benefits. In so holding, the Court observed that the eligibility for Medicaid benefits "*ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State*" (emphasis added). Blum v. Yaretsky, 457 U.S. at 1009. A child abuse diagnosis is a medical judgment, like any other, made based upon professional standards not established by the state. Therefore, it is inapposite to characterize Dr. Knox's evaluation/diagnosis as a public function "traditionally and exclusively" within the prerogative of the state.

More generally speaking, Courts have identified examples of traditional and exclusive functions of the state, such as exercising eminent domain and regulating free speech in a public forum. Jackson v. Metropolitan Edison Company, 419 US 345, 353 (1974); Lee v. Katz, 276 F.3d 550, 555 (2002). Medical diagnosis is plainly distinguishable from those examples. If rendering a diagnosis of child abuse satisfies the public function test, then at least thousands of

---

[38] See, Docket 1, Page 13 of 16 (Complaint, ¶ 114).

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

/JW
.P.33112

physicians since the advent of modern medicine have unwittingly and repeatedly been rendering themselves governmental actors. On the contrary, Plaintiffs' contention is grossly inaccurate. The Court should reject Plaintiffs' contention that the public function test applies and rule that Dr. Knox's actions fall outside of the realm of §1983 claims.

### 2. The Joint Action Test Does Not Apply to Warrant Treatment of Dr. Knox as a Governmental Actor.

To determine if the joint action test applies to treat a private party as a governmental actor for the purposes of §1983, "'courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.' The test focuses on whether the state has 'so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity.'" Franklin v. Fox, 312 F.3d 424, 445 (9th Cir.2002)(Citations omitted). No joint action exists where the benefit of the complained-of conduct does not flow to the state. Kirtley v. Rainey, 326 F.3d 1088, 1093 (9th Cir.2003) (Holding that a court-appointed guardian ad litem is insulated from §1983 liability in a case alleging improper custodial placement of a minor child.)

The 9th Circuit Court of Appeals specifically rejected the contention that a guardian ad litem – a state employee specifically appointed by the Court for the purpose of fact-finding and reporting in custody proceedings – was a joint actor with the state. Kirtley v. Rainey, 326 F.3d 1088, 1094 (9th Cir. 2003). Dr. Knox was an employee of a private non-profit, rendering medical judgment pursuant to applicable professional standards. She did not act in concert with OCS or law enforcement to effectuate a particular result.[39] Instead, like the guardian ad litem in Kirtley,

---

[39] Exhibit A, ¶ 12.

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 12 of 21

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

state actors later used her medical opinions to make custody determinations and/or institute criminal investigations. <u>Kirtley v. Rainey</u>, 326 F.3d 1088, 1091 (9th Cir. 2003). Dr. Knox's mere rendering and reporting of her medical opinion can no more make her subject to §1983 liability than the guardian ad litem in <u>Kirtley</u>. Plaintiffs' argument would put any trial witness on par with a prosecutor, i.e., a state joint actor, depending upon whether complaining party found the witness' testimony unfavorable to the ultimate outcome of their case.

In support of their contention for the applicability of the joint action test, Plaintiffs assert that "[Alaska CARES] operates as a willful participant in joint activity with OCS/AST…"[40] Recall, the NCA accreditation standards make clear and "[t]he core MDT *must* be comprised of representatives from law enforcement [and] child protective services."[41] Regardless, though it is true that OCS and the Alaska State Troopers were both represented on the Alaska CARES multidisciplinary team, simply working with state actors does not suffice to subject all participating non-governmental actors to §1983 liability. The joint action test requires a conspiracy between the governmental and non-governmental participants with the shared goal of violating a plaintiff's constitutional rights. <u>United Steel Workers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-41 (9th Cir. 1989). Dr. Knox rendered an evidence-based medical opinion as to I.A. She did not conspire with any party to effectuate loss of custody or the bringing of criminal charges.[42]

---

[40] <u>See</u>, Docket 1, p. 13 of 16 (Complaint, ¶ 116).
[41] Exhibit D, p. 14 (emphasis added).
[42] Exhibit A, ¶ 12.

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 13 of 21

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100  FAX (907) 274-5111

Plaintiffs' reliance on the joint action test fails because Dr. Knox's goal in participating in the multidisciplinary team was to exercise her medical judgment in the best interest of I.A. in adherence to the NCA's standards of accreditation of children's advocacy centers.[43] Importantly, the NCA is also a 42 U.S.C. 501(c)(3) corporation, not a government agency.[44]

Common participants in the Alaska CARES multidisciplinary team enter into a Memorandum of Agreement whereby they acknowledge the scope of their independent team role.[45] Of the three commitments listed for Providence and the eighteen commitments listed for Alaska CARES, none involve a law enforcement or custodial determination function.[46] In fact, even the commitments listed for law enforcement and OCS are focused on supporting the health and wellness of abuse victims, in perfect keeping with the Memorandum of Agreement's stated goal to "[promote] a comprehensive child-centered approach to identify, treat and heal children affected by sexual abuse, physical abuse and neglect."[47]

Dr. Knox's dealings with I.A. occurred within the bounds of her role as a team pediatrician.[48] To the extent that state officials subsequently used her opinion as evidence in criminal or child custody proceedings, it simply makes her witness. Even assuming, *arguendo*, that the complained-of custody determination constituted a deprivation of constitutional rights, Plaintiffs cannot point to any evidence tending to show that Dr. Knox or Providence conspired

---

[43] Exhibit A, at ¶ 3.
[44] Exhibit H, ProPublica article RE the National Children's Alliance Inc.
[45] Exhibit I, Memorandum of Agreement, pp. 2-7 of 16.
[46] Id. at pp. 2-3 of 16
[47] Id. at p. 1 of 16.
[48] Exhibit A, ¶ 3.

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

/JW
.P.33112

with law enforcement or OCS to effectuate those harms. Therefore, the Ackers cannot assert a viable §1983 claim against the Defendants based upon the joint action test.

### 3. The Government Compulsion Exception Does Not Apply to Allow Plaintiffs to Overcome the Inapplicability of §1983.

The Government Compulsion exception applies "where the state has 'exercised coercive power or has provided such significant encouragement' that the challenged action must be considered that of the state or where the 'state knowingly accepts the benefit derived from unconstitutional behavior.'" Heineke v. Santa Clara University, 379 F.3d 1009, 1012 (9th Cir. 2020)(Citations omitted.).

In support of their argument that the Government Compulsion test applies, Plaintiffs allege that Alaska CARES' actions "are entwined with state policies and/or the state is entwined in its management and control."[49] In reality, Alaska CARES' actions are governed by the applicable NCA standards of accreditation and the Memorandum of Agreement outlining the roles of the Alaska CARES multidisciplinary team.

Plaintiffs' Complaint inaccurately alleges that Alaska CARES is government funded and is saddled with (non-existent) contractual obligations to the state.[50] In his deposition testimony, former Co-Defendant and Alaska CARES director Bryant Skinner clarified that though Alaska CARES is the beneficiary of stated administered "pass-through" grants, it is not state funded.[51] Co-Defendant Providence also confirmed the inaccuracy of the allegations of contractual

---

[49] See, Docket 1, Page 13 of 16 (Complaint, ¶ 117).

[50] See, e.g., Docket 1, Page 11-14 of 16 (Complaint ¶104-106; ¶110-111; ¶119-122).

[51] Exhibit C, p. 53; See also, Docket 18, Page 9 of 12 (Providence Health & Services-WA d/b/a Providence Alaska Medical Center and Bryant Skinner's Answer to Complaint, ¶ 110).

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 15 of 21

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

relationships between Providence and the State.[52] As noted above, Alaska CARES generously receives funding from dozens of private benefactors.[53] Regardless, receipt of government funds is insufficient to convert a private company into a state actor, even where "virtually all of the (actor's) income [i]s derived from government funding." <u>Heineke v. Santa Clara University</u>, 379 F.3d 1009, 1013 (9th Cir. 2020). The government must also exercise coercion in conjunction with funding – i.e., the state must threaten to withdraw patronage unless the private entity does the state's bidding. Plaintiffs' Rule 56(e) continuance yielded no evidence that the state doled out grants to Alaska CARES coercively because the monies were not given conditioned upon Alaska CARES pursuing some ulterior motive of the state – let alone a course of conduct directed at depriving families of their constitutional rights.

The mere fact that a private company is subject to government oversight is an insufficient basis to meet the government compulsion test, even when funding is specifically contingent upon compliance with state regulations. <u>Heineke v. Santa Clara University</u>, 379 F.3d 1009, 1013 (9th Cir. 2020) (<u>See, e.g., Sutton</u>, 192 F.3d 826, 841 (9th Cir. 1999)("[G]overnmental compulsion in the form of a generally applicable law, without more, is [not] sufficient to deem a private entity a governmental actor."); <u>Jackson v. Metro. Edison Co.</u>, 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the 14th Amendment.")).

---

[52] <u>See</u>, Docket 18, Page 8-9 of 12 (Providence Health & Services-WA d/b/a Providence Alaska Medical Center and Bryant Skinner's Answer to Complaint, ¶104-106; ¶110-111; ¶119-122).
[53] Exhibit D.

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 16 of 21

/JW
.P.33112

Plaintiffs cannot show evidence that Providence is dependent upon state funding, let alone that they are being coerced into actions violative of Plaintiffs' constitutional rights. Therefore, the Ackers are unable to assert a viable argument for the application of the government compulsion test.

**4.** **The Government Nexus Test Does Not Apply to Allow Plaintiffs to Overcome the Inapplicability of §1983.**

State action may be found only if there is such a close nexus between the state and the challenged action that seemingly private behavior may be fairly attributable to the state. Brentwood v. Tennessee Secondary School Athletic Association, 121 U.S. 288, 295 (2001)(citing, Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). For example, the close nexus exists where an off-duty state employee purports to act under color of law in the performance of his duties to influence the behavior of others. Anderson v. Warner, 451 F.3d 1063, 1065-66 (9th Cir.2006)(An off-duty correctional officer assaulted a motorist after the two were in a traffic collision. While assaulting the motorist, the officer prevented bystanders from intervening, by informing them that he was a member of law enforcement.). The Kirtley court rejected the close Nexus test as to the guardian ad litem – who was appointed by the state, paid by the state and subject to state regulation – holding that those links are not sufficient to meet the Nexus test. Kirtley v. Rainey, 326 F.3d 1088, 1094 (9th Cir. 2003).

There is no evidentiary basis to demonstrate that Dr. Knox's conduct – a medical evaluation of I.A. – was so closely intertwined with that of the state that it should be deemed "fairly attributable to the state." Unlike the guardian ad litem in Kirtley, Dr. Knox has never been a government employee, she was not appointed by the state, she has never been paid by the state,

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 17 of 21

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100    FAX (907) 274-5111

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

nor was she subject to state regulation, apart from those regulations governing medical licensure. Not only is she not vested with state authority and never purported to be, but Dr. Knox also made none of the complained-of decisions – i.e., withdrawal of custody and/or conducting criminal investigations. Her role in the Acker case was limited to the performance of her duties as a pediatrician in conformance with the standards of her profession. The Court should find that Dr. Knox is not subject to §1983 liability because the Plaintiffs cannot meet the government nexus test.

## II.      DR. KNOX IS IMMUNE FROM CIVIL LIABILITY FOR ALLEGED DAMAGES.

28 U.S.C. §1367 provides this Court with supplemental jurisdiction over any remaining state court claims following disposition of the claims sounding under 42 U.S.C. § 1983 – i.e., those claims for which the Court maintains original jurisdiction. Apart from the allegations under § 1983, Plaintiffs assert state law tort claims based upon the same facts and circumstances which they purport give rise to their claim for relief under 42 U.S.C. § 1983. Namely, they allege harms, including the loss of custody of their children, proximately attributable to Dr. Knox because of her alleged breach of a duty to them.[54]

State law and widely promulgated public policy mandates Dr. Knox's immunity for the complained-of actions. 42 U.S.C. § 5106a governs federal administration of grants to the states for child abuse/neglect prevention and treatment programs. The federal code makes a state's eligibility for grants specifically contingent upon state creation and enforcement of laws providing immunity from civil liability for individuals who, like Dr. Knox, "provide information

---

[54] Exhibit A, ¶ 6.

or assistance, including medical evaluations or consultations, in connection with a report, investigation, or legal intervention pursuant to a good faith report of child abuse or neglect." 42 U.S.C. § 5106a. (b)(2)(B)(vii).

In keeping with the requirements of the federal grant statute, the State of Alaska provides for Dr. Knox's immunity by way of AS 47.14.300 and AS 47.17.050. Therefore, upon dismissal of the §1983 claims, any remaining claims against Dr. Knox cannot survive judicial scrutiny and she should be dismissed from this lawsuit from this lawsuit with prejudice.

**A.** **Dr. Knox is Immune from Liability for Any Action Taken in Furtherance of Her Role/Duties on Alaska CARES MDT Pursuant to AS 47.14.300(h).**

AS 47.14.300 (h) holds that "(a) person who serves on a multidisciplinary child protection team is not liable for damage or other relief in an action brought by the reason of the performance of a duty, a function or an activity of the team." As part of the Alaska CARES multidisciplinary team, Dr. Knox conducted medical evaluations of children for whom there was a concern for abuse, she rendered diagnoses regarding the existence of nonaccidental trauma and she made recommendations as to abuse victims' medical needs.[55] Because Dr. Knox's involvement with the I.A. case occurred within the context of her role with the Alaska CARES multidisciplinary team, she is statutorily immune and she should be dismissed with prejudice.

**B.** **Dr. Knox is Immune from Civil Liability for Her Opinion Related to I.A. Pursuant to AS 47.17.050.**

AS 47.17.050 holds that "a person who, in good faith, makes a report under this chapter… or participates in judicial proceedings related to the submission of reports under this chapter, is

---

[55] Exhibit A, ¶ 6.

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 19 of 21

/JW
.P.33112

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

immune from civil or criminal liability that might otherwise be incurred…" The law specifically extends immunity to medical providers who report on suspected child abuse and even contemplates the participation of those professionals in conjunction with ongoing investigations and interviews through a child advocacy center, such as Alaska CARES. <u>See</u>, AS 47.17.020; AS 47.17.033. Dr. Knox dealt with I.A.'s case in good faith to protect her health and wellness. Accordingly, Dr. Knox is afforded immunity under AS 47.17.050 and the Ackers' claim against her should be dismissed with prejudice.

<u>**CONCLUSION**</u>

The Court should grant Dr. Knox's Motion for Summary Judgment and dismiss her with prejudice from this lawsuit because (1) Dr. Knox never acted in conformance with a government policy so as to create exposure under 42 U.S.C. §1983, (2) §1983 actions are otherwise inapplicable to Dr. Knox because is a non-governmental actor, (3) Plaintiffs cannot establish that any recognized exceptions applies to allow her, as a non-governmental actor, to be held liable under §1983, and (4) Dr. Knox is otherwise immune from civil liability for all allegations lodged against her pursuant to AS 47.14.300 and AS 47.17.050.

DATED this 31st of January 2024 at Anchorage, Alaska.

FARLEY & GRAVES, P. C.

By: ___s/*TIMOTHY W. BOWMAN*___
FARLEY & GRAVES, P.C.
807 G Street, Suite 250
Anchorage, AK 99501
Ph. (907) 274-5100
Fax (907) 274-5111
E-Mail: tbowman@farleygraves.com
Alaska Bar No.: 0905012
Attorneys for Defendant Barbara Knox, M.D.

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION
FOR SUMMARY JUDGMENT
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG

Page 20 of 21

/JW
.P.33112

Case 4:22-cv-00017-SLG   Document 79   Filed 01/31/24   Page 20 of 21

FARLEY & GRAVES, P. C.
807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100   FAX (907) 274-5111

FARLEY & GRAVES, P. C.

807 G STREET, SUITE 250
ANCHORAGE, ALASKA 99501
(907) 274-5100  FAX (907) 274-5111

1

2

3                        <u>CERTIFICATE OF SERVICE</u>

4            Pursuant to Civil Rule 5, I hereby certify that on
      the 31st day of January 2024 a true and correct copy of
5     the foregoing was served CM/ECF electronically on the
      following person(s):

6            Michael C. Kramer, Esq.
             Kramer and Associates
7            542 4th Ave., Suite 207
             Fairbanks, AK 99701
             *Counsel for Plaintiffs*
8            service@mikekramerlaw.com
             arnell@mikekramerlaw.com

9            Chester D. Gilmore Esq.
             Cashion Gilmore, LLC
10           510 L Street, Suite 601
             Anchorage, AK  99501
             *Counsel for Providence and Bryant Skinner*
11           chester@cashiongilmore.com
             jennifer@cashiongilmore.com

12    By:  s/Joyce L. Wylie
             Legal Assistant
13           jwylie@farleygraves.com

14

15

16

17

18

19

20

21

22

23

DEFENDANT BARBARA KNOX, M.D.'S RENEWED MOTION          Page 21 of 21                    /JW
FOR SUMMARY JUDGMENT                                                                   .P.33112
ACKER ET AL V. KNOX ET AL
CASE NO. 4:22-cv-00017 SLG